UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MONSIEUR SHAWNELLIAS BURGESS,<br><br>    Plaintiff,<br><br>v.<br><br>DOJI, INC. et al.,<br><br>    Defendants. | Case No. 3:25-cv-00495<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Luke A. Evans |

To:    The Honorable Aleta A. Trauger, District Judge

## **REPORT AND RECOMMENDATION**

This report and recommendation addresses four pending motions:

1)    A motion by defendants DOJI, Inc., Brandy Worman (Worman), Peter Demos (Demos), and Campell Ignatz (Ignatz) to dismiss plaintiff's second amended complaint. (Doc. No. 184.)

2)    Plaintiff's motion for leave to file a third amended complaint. (Doc. No. 174.)

3)    Defendants' motion to declare plaintiff a vexatious litigant and for inherent-authority sanctions. (Doc. No. 246.)

4)    Defendants' motion for Rule 11 sanctions. (Doc. No. 272.)

The core of this case was simple—whether defendants banned plaintiff from their restaurant on April 17, 2025 for racially discriminatory reasons that violate 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1964; or whether they simply grew weary of what they considered inappropriate conduct toward the restaurant's teenage servers. Yet the docket for this case is approaching 300 docket entries for reasons that directly prompted two of defendants' pending motions. For the sake of brevity, familiarity with the record is presumed. The Court will note key facts only as needed when it addresses each pending motion.

## I. Discussion

### A. Motion to Dismiss Second Amended Complaint

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "We are required to construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. Nevertheless, we need not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action. The plaintiff's complaint instead must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (internal quotation marks and citations omitted). While pro se litigants like plaintiff must follow all procedural rules like any other litigants, *Matthews v. Copeland*, 286 F. Supp. 3d 912, 915 (M.D. Tenn. 2017) (citations omitted), they are allowed a more liberal interpretation of their complaints under less stringent standards than formal pleadings drafted by lawyers. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citations omitted).

#### 1. Count I: Section 1981

"At the motion to dismiss stage, plaintiffs need only to point to facts that make plausible their allegations. In the § 1981 context, this means alleging sufficient facts to show that (1) the

2

plaintiff belonged to a protected class; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a)." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 755 (6th Cir. 2023) (citations omitted). "The second prong, regarding intentional discrimination, can be shown through either direct evidence of discrimination or circumstantial evidence which would support an inference of discrimination." *Id.* (internal quotation marks and citation omitted). The second element requires a plaintiff to plead that race was a "but for" cause of the inquiry. *See id.* at 756 (citation omitted) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)).

Assuming that the first and third elements are present for purposes of the pending motion, the second element is where plaintiff's allegations fail. According to plaintiff, an alleged incident of sexually harassing his server, Ignatz, on April 10, 2025 caused Demos, the sole decision-maker, to ban him from the restaurant. (Doc. No. 172 at 3.) Defendants did not notice when plaintiff returned to the restaurant on April 16, 2025, but they did notice when he returned to the restaurant again on April 17, 2025, at which point Worman asked him to leave per Demos's prior decision. Worman allegedly uttered a racial slur at plaintiff as he was on his way out of the restaurant. Plaintiff's chronology means two things. First, the chronology means that the decision to ban plaintiff was made about a week before the alleged utterance of the racial slur. Second, the assertion means that Worman, who allegedly uttered the slur on April 17, 2025, could not have influenced the decision through her behavior that day. *Compare Third Space Partners, LLC, v. 668 Atrium, LLC*, No. 1:26-CV-00568, 2026 WL 1998336, at *8 (N.D. Ohio July 10, 2026) (Section 1981 claim survived motion to dismiss based on other evidence about business operation, but alleged racially motivated remarks were not uttered by a decision-maker and not uttered

3

contemporaneously with the decision) *with Glessner v. Chardan, LLC*, No. CV SAG-22-03333, 2023 WL 4351331, at *5 (D. Md. July 5, 2023) (Section 1981 claim plausible where manager and decision-maker made racial comments contemporaneously with decision to refuse service) *and Crumb v. McDonald's Corp.*, No. CV DKC 15-1719, 2016 WL 759213, at *9 (D. Md. Feb. 26, 2016) (Section 1981 claim plausible where manager on duty made racial comment and then refused to serve plaintiff when plaintiff next visited the restaurant). The chronology in the second amended complaint is consistent with the "general affidavit" that plaintiff attached to the original complaint, in which he swore that the alleged slur was uttered after a complaint about his prior behavior toward restaurant staff; after the decision was made to ban him from the restaurant based on that behavior; and after he was already on his way out of the restaurant. (Doc. No. 1-1 at 1.)[1]

The second amended complaint has other defects as well. Plaintiff has pled that he was a patron of defendants' restaurant for "well over 10 years" (Doc. No. 172 at 3); in both the original and first amended complaints, plaintiff had pled the additional detail that he frequented the restaurant enough to have a "favorite table." (Doc. No. 1 at 3; Doc. No. 16 at 5.) Plaintiff, however, has not pled whether he faced racial animus at any other time in his 10-year history with the restaurant; whether other non-white customers were present and faced racial animus on April 10, 2025; or whether white customers were allowed to patronize the restaurant after being accused of sexual harassment. *Cf. Bass v. Hillstone Rest. Grp., Inc.*, No. 223CV02297, 2024 WL 150444, at

---

[1]    Out of respect for the leniency afforded to pro se litigants at the pleading stage, and to make sure that the amended pleading is understood, courts can construe amended pro se pleadings in conjunction with past pro se pleadings. *See Leggett v. W. Express Inc.*, No. 3:19-CV-00110, 2020 WL 1161974, at *1 n.1 (M.D. Tenn. Jan. 6, 2020) (collecting cases), *report and recommendation adopted sub nom. Leggett v. W. Express Inc.*, No. 3:19-CV-00110, 2020 WL 1158140 (M.D. Tenn. Mar. 10, 2020); *accord, e.g., Pratt v. Portfolio Recovery Assocs.*, No. 2:24-CV-02499, 2026 WL 318440, at *1 n.4 (W.D. Tenn. Jan. 14, 2026), *report and recommendation adopted*, No. 2:24-CV-02499, 2026 WL 316036 (W.D. Tenn. Feb. 5, 2026).

*4 (W.D. Tenn. Jan. 12, 2024) (Section 1981 claim dismissed, where plaintiffs failed to clarify whether they "were the only African Americans in the restaurant that evening. It is also unclear whether other individuals were dismissed from the restaurant for the alleged marijuana smells.").

Under these circumstances, plaintiff has not plausibly alleged that defendants banned a regular patron of over 10 years from their restaurant solely because of race. Plaintiff's conclusory assertion otherwise (Doc. No. 172 at 7) does not change the above analysis. Additionally, while the Court gave plaintiff one more chance through the second amended complaint to identify whether an additional "Jane Doe" was part of the events in question, plaintiff has not plausibly pled that "Jane Doe" was anyone other than defendant Ignatz. Consequently, the Court recommends granting defendants' motion with respect to Count I of the second amended complaint.

### 2. Count II: Title II of the Civil Rights Act of 1964

"The Sixth Circuit has not resolved exactly what the elements of a Title II discrimination claim are, but district courts within the Sixth Circuit approach such claims under the same analysis applied to § 1981 or Title VII claims." *Townes v. City of Memphis*, No. 2:23-CV-02672-TLP-ATC, 2025 WL 367388, at *8 (W.D. Tenn. Jan. 28, 2025) (citations omitted). Plaintiffs pleading a Title II claim thus have to allege plausibly 1) that they were members of a protected class; 2) that they attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; 3) that they were denied those benefits and enjoyment; and 4) that they were treated less favorably than similarly situated persons who are not members of the protected class. *See Willock v. Hilton Domestic Operating Co.*, 474 F. Supp. 3d 938, 953 (M.D. Tenn. 2020) (citing *Bormuth v. Dahlem Conservancy*, 837 F. Supp. 2d 667, 674 (E.D. Mich. 2011)) (other citation omitted).

Just as plaintiff fell short on the second element of his Section 1981 claim, he falls short on the fourth element of his Title II claim. As explained above, plaintiff has not pled sufficiently

5

that he was treated less favorably than customers outside the protected class at any other time in his 10-year history with the restaurant; that any similarly situated members of the protected class also received less favorable treatment on April 10 or 17, 2025; or that similarly situated customers outside the protected class were allowed to patronize the restaurant after being accused of sexual harassment. *Cf. Pizzimenti v. City of Detroit*, No. 25-11506, 2026 WL 1049059, at *8 (E.D. Mich. Feb. 17, 2026) (Title II claim dismissed where "Plaintiff did not identify similarly situated persons *outside* the alleged protected class . . . let alone how Defendants treated Plaintiff less favorably than any such similarly situated persons."), *report and recommendation adopted*, 2026 WL 852015 (E.D. Mich. Mar. 27, 2026). Also as explained above, the only racially motivated act that plaintiff has identified was an alleged slur that was used against him one week after the decision to ban him from the restaurant and that was spoken by someone other than the decision-maker. Plaintiff's chronology confirms that the racially motivated act and the alleged unfavorable treatment of being banned from the restaurant were not connected to each other. Consequently, the Court recommends granting defendants' motion with respect to Count II of the second amended complaint.

### B.      Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure governs plaintiff's motion for leave to amend. Under the rule, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 emphasizes that cases should be tried on the merits rather than on the technicalities of pleadings, *see Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (citations omitted), but "leave to amend should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 495 (6th Cir. 2011) (internal quotation marks and citation omitted). "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional

resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994) (citation omitted). Futility means that a proposed amendment would not survive a hypothetical motion to dismiss under Rule 12. *See SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citation omitted).

Here, leave to file a third amended complaint is unwarranted because the amendment would be futile. The defects in pleading that the Court described above have persisted through three pleadings so far. A fourth pleading would not fix any of those defects. In the proposed third amended complaint, plaintiff still asserts that Demos made his decision to ban plaintiff from the restaurant on April 10, 2025 in response to a staff complaint of sexual harassment. (Doc. No. 174-1 at 3.) The alleged racial slur still occurs one week after the decision. (Doc. No. 174-1 at 5.) Plaintiff still does not plead whether he faced racial animus at any other time in his 10-year history with the restaurant; whether other non-white customers were present and faced racial animus on April 10 or 17, 2025; or whether white customers were allowed to patronize the restaurant after being accused of sexual harassment. The third amended complaint would accomplish nothing more than add details about the sexual harassment allegation from April 10, 2025 and introduce a prior incident from around January 2025 when restaurant staff accused plaintiff of acting inappropriately. In this prior incident, plaintiff admits to ordering a server a meal from another restaurant "as a gesture of appreciation for her courtesy in seating Plaintiff at or near Table 18" (Doc. No. 174-1 at 4) but denies that the incident was sexual harassment or "creepy." However that incident should be characterized, pleading it serves no purpose except to accentuate that plaintiff had a history at the restaurant and that defendants had non-discriminatory reasons to grow weary of him. *Cf. Jackson v. Waffle House, Inc.*, 413 F. Supp. 2d 1338, 1365 (N.D. Ga. 2006)

(summary judgment to restaurant on Title II claim, where threat to restaurant cook to "come across the counter and grab you" provided a legitimate, nondiscriminatory reason for asking family to leave). The proposed third amended complaint also would restore deficient claims that already have been dismissed (Doc. No. 79) and for which amendment already has been denied (Doc. No. 171). Plaintiff has not made a sufficient showing to justify revisiting those prior rulings.

Without amendments that would survive dismissal, a third amended complaint would only add unneeded delays and burdens in a case in which plaintiff already has filed numerous motions that have been denied as either frivolous or disproportionate to the needs of the case. (*See* Doc. Nos. 79, 237, 242, 269, 288.) The Court accordingly recommends denying plaintiff's motion for leave to amend.

### C. Motion to Declare Vexatious Litigant and for Sanctions

#### 1. Sanctions Under 28 U.S.C. § 1927

Defendants seek sanctions under 28 U.S.C. § 1927. Under Section 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* Section 1927 applies to pro se litigants as well as to attorneys. *See Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002), *cited in Gitler v. Ohio*, 632 F. Supp. 2d 722, 724 (N.D. Ohio 2009) (other citations omitted).[2] The purpose of Section 1927 sanctions "is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646

---

[2]    The Court is regarding plaintiff as a pro se litigant for purposes of this report and recommendation, but defendants did assert—and plaintiff did not contest—during in-person proceedings on May 28, 2026 that plaintiff has a law degree. (Doc. No. 231 at 30.)

(6th Cir. 2006) (citations omitted). When an attorney or pro se litigant "knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney," *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986), or the pro se litigant. An award of sanctions would be reviewed on appeal only for abuse of discretion. *Wynn v. City of Covington, Kentucky*, ___ F.4th ___, No. 25-5617, 2026 WL 950772, at *3 (6th Cir. Apr. 8, 2026).

The record of this case leaves no doubt that plaintiff knew or should have known that many of his court filings and discovery demands have been frivolous. This case was about allegations that defendants banned plaintiff from their restaurant for racially discriminatory reasons. Depositions of some restaurant officials and staffers, plus some discovery about the events of April 2025 and any similar events in the restaurant's history, should have sufficed to probe the merits of the allegations. Instead, the Court is not aware that plaintiff has conducted any depositions in this case. The Court had to order plaintiff to submit to his own deposition after he filed a meritless motion for a protective order. (Doc. Nos. 153, 159, 168.) Through the motion for a protective order, plaintiff wanted to postpone his deposition indefinitely for numerous reasons including his insistence that he did not know who served him on April 10, 2025; that identifying Ignatz as the server was "factually impossible"; and that the identity of his server could not be known until he cross-referenced his "personal financial and credit card records" with "Point of Sale (POS) records and server logs." (Doc. No. 153 at 5.) If plaintiff had his way then this case would remain stuck in an infinite regress of document demands seeking forensic-level confirmation of increasingly tangential, irrelevant, and bizarre side points.

Plaintiff's frivolous filings can be grouped into the following categories:

1) *Identity of his server on April 10, 2025*. Ignatz was his server. As the Court remarked previously when denying frivolous motions, plaintiff knows who served him because he was there and because defendants have confirmed what he saw. (Doc. No. 269.) The Court permitted reintroduction of the previously dismissed fictitious "Jane Doe" party (Doc. No. 171) in the second amended complaint only in an abundance of caution in case plaintiff could recognize his server by face but simply needed a name. Plaintiff has made clear, though, that he has known his server all along and that he instead is obsessed with a nonsensical insistence that Ignatz could not possibly have been his server on April 10, 2025 because 1) her title was hostess, not server; 2) hostesses in small family restaurants cannot double as servers because that would violate some rule in his head about inflexible category distinctions; and 3) the server therefore must be some as-yet unidentified person. (*See, e.g.*, Doc. No. 231 at 6–9.) This single issue has driven numerous discovery requests and dozens of court filings including motions filed in defiance of previous Court denials. (*See, e.g.*, Doc. Nos. 8; 21; 53; 78; 79 at 14 (warning plaintiff "to stop filing unnecessary and premature motions"); 80; 87; 93; 123; 125; 130; 148-1 through 148-36 (*passim*); 154; 155; 156; 228; 236 (striking notices); 237 (denying subpoena requests as disproportionate); 242 (denying frivolous motion and striking notices); 269 (denying frivolous motions); 283; 288 (denying frivolous motions)). *Cf. Limerick v. Greenwald*, 749 F.2d 97, 101 (1st Cir. 1984) (Section 1927 sanctions appropriate following a vexatious appeal, where "[c]ounsel's course of conduct in the filing of hundreds of pages of irrelevant documents, in citing to dozens of cases unrelated to the real issues in these appeals, in bringing repetitive motions without a shred of rational basis, and in seeking to resurrect matters long since finally concluded has been at least irresponsible and has come perilously close to an abuse of process"); *In re Melcher*, No. C-13-04930-RMW, 2014 WL 4954776, at *3 (N.D. Cal. Oct. 1, 2014) (Section 1927 sanctions warranted, where debtor "has

filed hundreds of pleadings in the Chapter 7 case, requiring the Trustee to respond with his own filings").

2)      *Events of January 2025*. On February 13, 2025, plaintiff wrote a letter to Worman, the general manager of the restaurant, threatening litigation over an incident from January 2025 in which he had spoken to one of the restaurant's teenage servers "about eating with me while I'm present one day."[3] (Doc. No. 148-35 at 2.) The extent to which the incident influenced the April 10, 2025 decision to ban plaintiff from the restaurant has prompted plaintiff to file numerous motions for disproportionate discovery, including requests to subpoena a restaurant server for phone records[4] and a strange request to subpoena the records from his own Uber customer account. (*See, e.g.*, Doc. Nos. 106, 107, 123, 125, 143, 237, 242, 269, 283, 288.) Plaintiff again has persisted with his efforts in defiance of Court orders denying his requests. *Cf. Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 181 (5th Cir. 2007) (Section 1927 sanctions affirmed, where counsel was denied leave to amend four times; filed a second case and counterclaims to avoid the effect of those denials; and decided after losing a jury verdict to continue the litigation "to generate more fees").

3)      *Miscellaneous other filings*. Other filings have included a motion to disqualify counsel (Doc. No. 17); a motion to sanction defense counsel based on the nonsensical "Jane Doe" theory (Doc. No. 41); a motion in limine, in the absence of any trial date, to exclude evidence of the "alleged incident" from January 2025 that plaintiff confirmed in his own February 13, 2025

---

[3]      Defendants have asserted that, around the times relevant to this case, plaintiff was approximately 55 years old and that the servers at the restaurant generally were teenagers. (Doc. No. 210 at 4 n.2.)

[4]      The place of compliance in the proposed subpoena was plaintiff's home address. (Doc. No. 107-1 at 1.)

letter (Doc. No. 64, 66); another motion for sanctions (Doc. No. 71) that was denied as frivolous (Doc. No. 86); and a superfluous motion to require recording of court proceedings when recording already occurs (Doc. No. 112). Numerous filings have violated local rules about formatting and page length, and plaintiff has persisted in his violations despite explicit warnings from the Court to stop. (Doc. No. 45, 220, 236, 269.) Finally, the Court's recitation of filings in the docket do not include the 461 requests for admission, 255 requests for production of documents, and 89 interrogatories that plaintiff served on defendants as of late May 2026. (Doc. No. 217.)

At this point, plaintiff has left no doubt that his conduct is willful, malicious, and driven by a bad-faith desire to injure defendants by running up their legal bills. Plaintiff threatened in his February 13, 2025 letter that he would "deem everyone as my foe" (Doc. No. 148-35 at 2) and has followed through with his threat. The filings summarized above have served no purpose in developing this case—a case that plaintiff does not want to develop anyway, as seen by the absence of any depositions conducted and the refusal to explore the central issue of racial animus. The filings have flouted local rules and have been openly defiant of prior orders explicitly deeming his filings frivolous. *Cf. Eruchalu v. U.S. Bank*, 749 F. App'x 543, 544 (9th Cir. 2019) (unpublished opinion) (Section 1927 sanctions of $189,908.65 affirmed, where plaintiff "twice refiled previously dismissed claims, ignored discovery orders, initiated similar proceedings in state court and bankruptcy court, and filed meritless motions and appeals over the course of the proceedings"); *Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990) (Section 1927 sanctions against pro se litigant affirmed, where pro se litigant showed bad faith by "attempting to file an amended complaint that did not materially differ from one which the district court had already concluded did not state a claim, and by continually moving for alterations in the district court's original judgment despite that court's clear unwillingness to change its mind"). Plaintiff's conduct in this case also is

12

consistent with his behavior in prior cases in state and federal court, which further bolsters the evidence in the docket of his willfulness. (Doc. No. 148 at 17–19.) In at least one prior case, plaintiff was assessed costs. *See, e.g., Burgess v. Bradford Hills HOA*, No. M2024-00102-COA-R3-CV, 2026 WL 711065, at *10 (Tenn. Ct. App. Mar. 13, 2026) (trial court judgments against plaintiff affirmed, and plaintiff assessed costs). Under these circumstances, plaintiff easily meets the Section 1927 criteria for unreasonable and vexatious multiplication of proceedings. The Court accordingly recommends granting defendants' motion for sanctions under Section 1927.

### 2. Sanctions Under Inherent Authority

Federal courts possess the inherent authority to sanction a party who acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks and citations omitted). In this instance, the Court can sanction plaintiff under its inherent authority if 1) his claims and litigation tactics were meritless; 2) he knew or should have known that his claims and litigation tactics were meritless; and 3) that his motive for proceeding anyway was an improper purpose such as harassment, delaying or disrupting the litigation, or hampering the enforcement of a court order. *See Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citations omitted); *accord Dubuc v. Green Oak Twp.*, 482 F. App'x 128, 132 (6th Cir. 2012) (unpublished opinion) (citations omitted). "As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995), *cited in Whiting v. City of Athens, Tennessee*, 170 F.4th 455, 466 (6th Cir. 2026); *and in Purple Rabbit Music v. JCJ Prods., L.L.C.*, No. 3:18-CV-0520, 2019 WL 4265074, at *3 (M.D. Tenn. July 22,

2019), *report and recommendation adopted*, No. 3:18-CV-00520, 2019 WL 4259453 (M.D. Tenn. Sept. 9, 2019).

For the sake of brevity, the Court will not recite again all of the conduct that it summarized above when discussing Section 1927 sanctions; but that same conduct by plaintiff independently satisfies all of the criteria for dismissal and for an award of costs under the Court's inherent authority. As noted above when the Court addressed the motion to dismiss, plaintiff's claims are meritless because he never pled any racially motivated conduct that occurred contemporaneously with the decision to ban him from the restaurant. Plaintiff knows that his repeated efforts to replead other defective claims and to pursue obsessive and bizarre discovery tactics are meritless and frivolous because the Court told him so repeatedly through multiple orders that he willfully and maliciously ignored when he pursued the same relief over, and over, and over again. *Cf. United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.*, 705 F. App'x 342, 347 (6th Cir. 2017) (unpublished opinion) (inherent-authority sanctions affirmed, where, *inter alia*, relator had a prior history of frivolous litigation based on the same environmental issue and, rather than stating no opposition to a motion to dismiss, filed his own motion to dismiss without prejudice that required a further response); *Metz*, 655 F.3d at 489 (inherent-authority sanctions affirmed, where, *inter alia*, counsel filed an intervenor complaint after the district court had dismissed identical claims with prejudice). Finally, plaintiff has stepped beyond harassment, delay, and hampering the enforcement of a court order by ignoring multiple Court orders and the law of the case altogether. *See United States v. Hendrickson*, 822 F.3d 812, 818 (6th Cir. 2016) ("When a district court has personal and subject matter jurisdiction over a case, an order issued by the court must be obeyed by the parties until it is reversed by orderly and proper proceedings.") (internal quotation marks and citation omitted). The exclamation point on plaintiff's bad faith came through his "expedited"

14

motion to require Ignatz, a teenager, to identify where she goes to school and to allow plaintiff to subpoena her school records to probe where she really was on April 10, 2025. (Doc. No. 287.) By that point in the litigation, plaintiff had been told multiple times that his quest to identify his April 10, 2025 server as someone other than Ignatz—in the face of his own personal experience as the customer—was absurd. (Doc. No. 269.) Rather than drop the issue, plaintiff intentionally chose to escalate the issue by demanding to invade a teenager's school life while magnanimously allowing her parents to be notified of the invasion. (Doc. No. 287 at 5 n.2.) The audacity of the demand is not just willful, malicious, and vexatious; it is disgusting.

Given plaintiff's history of abusive conduct in this case, "it is now time to call a halt." *Abadin v. Marvel Ent., Inc.*, No. 09CIV.0715PAC, 2010 WL 1257519, at *4 (S.D.N.Y. Mar. 31, 2010). Nothing short of dismissal and reimbursement of defendants' costs and fees will bring about that halt, and the Court has ample justification under its inherent authority to make that happen. Accordingly, the Court recommends granting defendants' motion for sanctions and dismissing the case in its entirety, with costs and fees, under its inherent authority independently from and in addition to Rule 12(b)(6) and Section 1927.

### D. Motion for Sanctions Under Rule 11

Finally, the Court will address the pending motion for Rule 11 sanctions only briefly. Among other requirements for a Rule 11 motion, the motion "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion." Fed. R. Civ. P. 11 adv. cmte. note to 1993 amendments. The Sixth Circuit considers the safe-harbor provision to be "unquestionably

explicit." *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) ("Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion.") (citation omitted).

Here, a question has arisen as to whether defendants afforded plaintiff a full 21-day safe-harbor period. (Doc. No. 273 at 7; 275 at 2.) Defendants seem to acknowledge a technical deficiency on the issue; in any event, the Court need not address any possible technical deficiencies. The Court already has identified Rule 12(b)(6) and its inherent authority as two independent bases for dismissal; and it has identified Section 1927 and its inherent authority as two independent bases for an award of costs and fees. Accordingly, the Court recommends denying the motion for Rule 11 sanctions without prejudice.

## II.      Recommendation

For all of the foregoing reasons, the Court respectfully recommends:

1)      Granting defendants' motion to dismiss the second amended complaint in its entirety (Doc. No. 184);

2)      Denying plaintiff's motion for leave to file a third amended complaint (Doc. No. 174);

3)      Granting defendants' motion to declare plaintiff a vexatious litigant and for inherent-authority sanctions (Doc. No. 246); and requiring defendants to submit a bill of costs and fees within 21 days after entry of an order adopting this report and recommendation; and

4)      Denying without prejudice defendants' motion for Rule 11 sanctions (Doc. No. 272).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 27th day of July, 2026.

LUKE A. EVANS
United States Magistrate Judge