**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MONSIEUR SHAWNELLIAS BURGESS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cv-00495** |
| | ) | **Judge Aleta A. Trauger** |
| **DOJI, INC.** ***et al.*****,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

The Magistrate Judge in this case has issued a Report and Recommendation ("R&R") (Doc. No. 294) addressing four dispositive motions: (1) the plaintiff's Motion for Leave to File Third Amended Complaint (Doc. No. 174); (2) the defendants' Motion to Dismiss Second Amended Complaint (Doc. No. 187); (3) the defendants' Renewed Motion to Declare Plaintiff a Vexatious Litigant and for Inherent Authority Sanctions ("Sanctions Motion") (Doc. No. 246); and (4) the defendants' Motion for Rule 11 Sanctions (Doc. No. 272). The R&R recommends that the defendants' Motion to Dismiss the SAC be granted and that the SAC be dismissed for failure to state a claim for which relief may be granted; that the plaintiff's Motion for Leave to File Third Amended Complaint be denied as futile; that the defendants' Motion to Declare Plaintiff a Vexatious Litigant and for Inherent Authority Sanctions under 28 U.S.C. § 1927 be granted and that, accordingly, the case be dismissed in its entirety with costs and fees awarded against the plaintiff; and that the defendants' Motion for Rule 11 Sanctions ("Rule 11 Motion") be denied without prejudice.

Now before the court are plaintiff Monsieur Shawnellias Burgess's Specific Written

Objections (Doc. No. 294) to the R&R. The defendants filed a Response to the Objections (Doc. No. 295), and the plaintiff filed a Motion for Leave to File Short Reply and Supplemental Exhibit, along with his proposed Reply and proposed exhibit (Doc. Nos. 296, 296-1, 296-1). The court will grant the Motion for Leave to File Short Reply and will consider the Reply in reviewing the plaintiff's Objections.

For the reasons set forth herein, the court will, for the most part, reject the R&R and will sustain in part the Objections. The Motion for Leave to File Third Amended Complaint will be granted, but most of the plaintiff's claims in the Third Amended Complaint will be dismissed as futile/for failure to state a claim for which relief may be granted; the defendants' Motion to Dismiss the Second Amended Complaint will be denied as moot; the defendants' Sanctions Motion will be granted in part and the court will enter filing- and discovery-related sanctions, as set forth in greater detail herein, but the court declines to sanction the plaintiff by dismissing the case in its entirety or ordering the plaintiff to pay attorney's fees. The Rule 11 motion will be denied, as neither party objects to the Magistrate Judge's recommendation in that regard. Finally, the court will lift the referral to rule directly on the defendants' renewed Motion for Rule 11 Sanctions (Doc. No. 311). That motion will be granted in part.

## I. STANDARD OF REVIEW – RULE 72

Federal Rule of Civil Procedure 72(b)(2) provides for the filing of objections to a Magistrate Judge's report and recommendation on a dispositive matter. The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

However, the district court is not required to review—under a *de novo* or any other

standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety" of a magistrate judge's report and recommendation has the same effect as a complete failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## II. THE PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

### A. Legal Standards Governing Rule 12(b)(6) Motions

The Federal Rules of Civil Procedure require that a complaint be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must do more than state legal conclusions or recite the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 564 (2007). However, the complaint need only

plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 754 (6th Cir. 2023) (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). Importantly, "the fact that this action was brought under one of the civil rights statutes requires [the court] to scrutinize such a dismissal with special care." *Id.* (quoting *Lucarell v. McNair*, 453 F.2d 836, 838 (6th Cir. 1972)).

At the same time, "the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When presented with a Rule 12(b)(6) motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Consideration of extrinsic materials need not convert a motion to dismiss into a motion for summary judgment, "so long as [the materials] are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett*, 528 F.3d at 430); *see also* 5B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure ("Wright & Miller") § 1357 (3d ed. updated Apr. 2022) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment.").

The court construes filings by *pro se* litigants "'liberally'" and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**B. Legal Standards Governing Motions to Amend**

Once the time for a party to amend as a matter of course under Rule 15(a)(1) expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." *Id.* However, a motion to amend may be denied when the motion is the product of "undue delay, bad faith by the movant, repeated failure to cure pleading deficiencies, undue prejudice to the opposing party, or [for] 'futility of amendment.'" *Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975, 981 (6th Cir. 2026)) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A "proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss." *Id.*

(citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). Accordingly, the court assesses "futility under the same standard applied to a Rule 12(b)(6) motion to dismiss," asking whether the proposed amendment "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

**C. Background**

Plaintiff Burgess, who is "African American and American Indian" (Doc. No. 16 at 3), filed this lawsuit in May 2025 against defendants DOJI, Inc. ("DOJI"), Brandy Worman, and Jane Doe. In response to a Motion to Dismiss filed by those defendants, he filed his First Amended Complaint ("FAC") (Doc. No. 16), in which he alleged generally that DOJI operates a restaurant (the "Restaurant") in Murfreesboro, Tennessee, that Worman is the general manager of the Restaurant, and that Jane Doe was a server at the Restaurant. On April 17, 2025, the plaintiff, who was a regular at the Restaurant, was asked by Worman to leave and was told that he would not be served, because his "last server complained regarding his behavior." (FAC at 6.) Worman would not tell him which server had complained about him or provide additional details, but she "alluded to sexual harassment" and threatened to call the police if the plaintiff did not leave. (*Id.*) The plaintiff collected his belongings and advised Worman that he "would have to sue for this behavior." (*Id.*) Worman responded by calling the plaintiff "the 'N' word" and demanding that he leave. (*Id.*) The plaintiff asserts that the underlying allegations of harassment and sexual harassment are false and that his ejection and banishment from the restaurant were based on his race. Based on these allegations, the FAC asserted race discrimination claims against all three defendants under 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1964. He also asserted a discrimination claim against DOJI under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* and an "aiding and abetting" claim under the THRA against Worman and

Jane Doe individually, as well as common law defamation, negligence, and fraudulent misrepresentation claims.

The defendants filed a Motion for Partial Dismissal of the FAC, which sought dismissal of all claims in the FAC *except* the § 1981 and Title VII claims. (Doc. No. 22.) The Magistrate Judge then assigned to the case issued a Report and Recommendation ("First R&R") (Doc. No. 48), recommending that the court exercise subject-matter jurisdiction over the plaintiff's discrimination claim against DOJI under the THRA but that his "aiding and abetting" claims under the THRA against Worman and Jane Doe be dismissed and that his other state law claims be dismissed as to all defendants. The plaintiff objected to the dismissal of his state common law claims (but not to the dismissal of his THRA "aiding and abetting" claim). (Doc. No. 50.) In January 2026, the court overruled the plaintiff's Objections to the Magistrate Judge's recommended disposition of the motion and adopted the recommendation that the motion be granted in part and denied. (Doc. No. 79.)

In April 2026, the Magistrate Judge granted the plaintiff leave to file a Second Amended Complaint, permitting him to add defendants Peter Demos, as DOJI's owner and president, Campbell Ignatz, whom the defendants had identified as the server who complained about Burgess, and Jane Doe, but directing him to file a revised Second Amended Complaint "to omit reference to claims previously dismissed." (Doc. No. 171.)[1] The next day, on May 1, 2026, the plaintiff filed the operative SAC, which asserts only claims under § 1981 and Title II.

Three days later, he filed a Motion for Leave to File Third Amended Complaint ("Motion to Amend") (Doc. No. 174), along with a proposed Third Amended Complaint ("TAC") (Doc. No.

---

[1] This Order apparently construed the court's prior ruling on the Motion for Partial Dismissal as dismissing the THRA discrimination claim in its entirety, as opposed to only the aiding and abetting claim under the THRA.

174-1). The proposed TAC incorporates numerous new allegations in support of his race discrimination claims, based apparently on the defendants' discovery responses. In addition, the TAC re-asserts a claim under the THRA for discrimination by a place of public accommodation, as well as claims for defamation, "negligence/negligent investigation/negligent supervision," and fraudulent misrepresentation. (*See* Doc. No. 174 at 3.) It asserts new claims for false light invasion of privacy and conspiracy, this time based on a purported conspiracy among "two or more Defendants" to "rely on and advance a false, unsupported, shifting, and pretextual sexual-harassment narrative to justify refusing Plaintiff service, removing him, banning him, and damaging his reputation."[2] (TAC ¶ 155.) The plaintiff asserts that the proposed amendment is not futile, that discovery has brought to light new evidence supporting the previously dismissed claims, and that the defendants will not be unduly prejudiced by the amendment.

*After* the plaintiff filed his Motion to Amend, the defendants filed their Motion to Dismiss the SAC. (Doc. No. 184.) They argue that the plaintiff's race discrimination claims under § 1981 and Title II are subject to dismissal because the SAC fails to allege facts that, if true, would establish that race is the "but for" reason for his being banned from the Restaurant, for purposes of the § 1981 claim, or that he was the target of intentional race discrimination, for purposes of his Title II claim.

The plaintiff filed both a Response and a Supplemental Response to the Motion to Dismiss. (Doc. Nos. 188, 193.) His position is that the "operative pleading alleges a straightforward race-discrimination theory: Plaintiff was a regular patron at Defendant's restaurant, was refused service, was ordered to leave, and was banned based on race after Defendants invoked an allegedly false harassment narrative." (Doc. No. 188 at 4.) In his Supplemental Response, the plaintiff asks that

[2] The FAC stated a claim for conspiracy to defame. (FAC at 10–11.)

the court exclude from consideration any "extra-pleading factual assertions" or, alternatively, that the motion be "conver[ted] under Rule 12(d)" to a motion for summary judgment. (Doc. No. 193 at 1–2.) He points out that he has requested discovery to test the defendants' position—discovery that, according to the plaintiff, had not been produced as of the date of his briefing. (*Id.* at 3.)

The defendants' Reply disavows reliance on any facts outside the pleadings and characterizes the plaintiff's Response as erecting and tearing down "straw men" while misrepresenting the plain language of the defendants' motion. (Doc. No. 199 at 2.)

The defendants, after being granted an extension of the deadline, filed their opposition to the plaintiff's Motion to Amend, in which they first ask the court to deny the Motion to Amend without prejudice, pending resolution of their Motion to Dismiss, and to permit the plaintiff to refile his Motion to Amend only if the SAC is not dismissed in its entirety.[3] (Doc. No. 255 at 1.) Alternatively, they argue that, if the court addresses the Motion to Amend first, it should deny it because it attempts to replead flawed claims that have already been dismissed, asserts a new invasion of privacy claim that is futile for the same reason as the already-dismissed defamation claim. Curiously, they do not argue that the proposed TAC is futile with respect to the race discrimination claims under § 1981, Title II, and the THRA, and they do not argue that they would be prejudiced by the granting of the Motion to Amend. The plaintiff filed a Reply in which he argues, among other things, that the pending Motion to Dismiss is not a reason to deny leave to amend and that futility should be "tested" after he is granted leave to amend. (Doc. No. 257.)[4]

[3] This argument makes no sense. Even if the court had been inclined to take that route despite its patient inefficiency, granting the Motion to Dismiss would not necessarily foreclose the filing of another motion to amend.

[4] He later also sought leave to supplement the record with "newly obtained" documents from the Tennessee Alcoholic Beverage Commission that, he argued, provided support for his defamation claims. (*See* Doc. No. 274.) The Magistrate Judge denied that request. (Doc. No. 288.) This court, in a separate Memorandum Order, has affirmed that Order.

The Magistrate Judge entered an R&R that first addresses the defendants' Motion to Dismiss the SAC and finds that the SAC fails to state colorable race discrimination claims against any of the defendants. The R&R therefore recommends that the motion be granted and that the SAC be dismissed in its entirety. (Doc. No. 293 at 5–6, 16.) He also recommends that the plaintiff's Motion to Amend be denied on the grounds of futility. (*Id.* at 7–8, 16.) The plaintiff objects to both of these recommendations, arguing that the R&R draws disputed factual and causal inferences in favor of the defendants and accepts as true the defendants' "sexual-harassment narrative," despite the "lack of contemporaneous corroboration" to support it, particularly Ignatz's complaint. (Doc. No. 294 at 3–4.) He also continues, apparently, to dispute that Ignatz was his server on April 10 and continues to insist on his need for "source verification" and other discovery.[5] He also argues that the Magistrate Judge failed to apply the "liberal" amendment standard embodied in Rule 15 and that he failed to address the new details added in the TAC in support of his claims. (*Id.* at 7.)

The court finds that, while the procedural posture of this case has been made unnecessarily chaotic by the number of utterly baseless motions (and motions for review) filed by the plaintiff, addressing the Motion to Dismiss before the Motion to Amend is inefficient and that both the defendants and the Magistrate Judge failed to fully address the new factual allegations in the proposed TAC in concluding that the Motion to Amend is futile. Although it is questionable whether the plaintiff's objections are sufficiently specific to satisfy the Rule 72 standard, this court, in the interest of justice, will nonetheless review the motions and objections *de novo*, beginning with the Motion to Amend.

---

[5] The court has already affirmed the Magistrate Judge's rulings on the plaintiff's various discovery-related motions.

### D. Facts As Alleged in the TAC

Plaintiff Burgess is a "Black/Native American" individual residing in Nashville. (TAC ¶¶ 1, 105.) The defendants are DOJI, the entity that operates the Restaurant from which the plaintiff was banned; Peter Demos, president of DOJI and the "decision-maker who, according to DOJI's interrogatory responses, decided to ban Plaintiff" from the Restaurant; Worman, General Manager of the Restaurant; Campbell Ignatz, an employee of DOJI "whom Defendants identify as the April 10, 2025 complainant whose alleged complaint formed part of the basis for Peter Demos's decision to ban Plaintiff"; and "Jane Doe," a purportedly unidentified DOJI employee "who is alleged to have been personally involved" in the events leading to the plaintiff's ban. (*Id.* ¶¶ 2–6.)

The plaintiff alleges that he has been a patron of the Restaurant for "[o]ver 10 years," up until the events that occurred in April 2025. (Id. ¶ 13–14.) The TAC then states what appears to be the defendants' position on what occurred in April 2025 while not necessarily adopting that position, using the phrases "Defendants contend," Defendants state," and "Defendants identify." (*Id.* ¶¶ 15–19.) Apparently, during discovery, the defendants produced documents to the plaintiff stating that Campbell Ignatz complained to Assistant Manager Cassidy Foster that, on April 10, 2025, the plaintiff had "touched her back and said 'goodbye, Campbell' in a manner she considered unwelcome," that Foster reported Ignatz's verbal complaint to Worman in an email, that Worman showed the email to Demos, and that Demos decided to ban Burgess from the Restaurant. (*Id.* ¶¶ 15–17.) The defendants also "state" that Worman was not at the Restaurant on April 10 when the purported interaction between Burgess and Ignatz occurred. (*Id.* ¶ 18.)

The plaintiff himself alleges that Worman told him on April 17, 2025 that "another complaint had been made against him and that he was banned," but she did not identify the complainant. (*Id.* ¶ 20.)

The reference to "another complaint," of course, implies a first complaint. Without actually explaining the context of the earlier complaint, the plaintiff takes issue with what he understands as the defendants' characterization of it, alleging what did *not* happen rather than what he claims did happen. What he does make clear is that there was a "January/February 2025 accusation" of "harassment" that resulted in a "January/February 2025 conversation" between Burgess and Worman. (*Id.* ¶ 21.) During that conversation, Burgess "refuted" the accusation. (*Id.* ¶ 22.) He was not banned from the Restaurant and continued eating there after that "conversation" with Worman, up until "Defendants later asserted a separate April 10, 2025 accusation involving Campbell Ignatz." (*Id.*) In the incident giving rise to the first complaint, the plaintiff had a meal delivered to another young server[6] at the Restaurant through Uber Eats. (*Id.* ¶ 25.) The plaintiff denies that there was anything "creepy" about that gesture and claims that the other server later thanked him in person for it. (*Id.* ¶ 23.)

The plaintiff also alleges that Worman, during the April 17 incident, "used the N-word toward Plaintiff . . . while refusing him service and requiring him to leave Defendants' restaurant." (*Id.* ¶ 32.) The plaintiff was more specific about the April 17 event and Worman's use of a racial epithet in the Affidavit that accompanied his original Complaint. There, he explains that, after Worman "falsely accused [him] of sexually harassing 'Jane Doe,'" she

> refused to serve Mr. Burgess and stated that Peter Demos . . . authorized her actions and banned Mr. Burgess from the restaurant. Mr. Burgess was then ordered to depart from the restaurant or the police would be called. On Mr. Burgess' way out Ms. Worman called Mr. Burgess the "N" word when he stated that he would have to sue for this behavior.

[6] The plaintiff, with one of his many Motions for Review, filed copies of Declarations prepared by the other server, Addyson Kress, and by Ignatz that were apparently produced to him in discovery. These Declarations indicate that, as of summer of 2025 when they signed their Declarations, Ignatz and Kress were both 18 years old. (Doc. No. 241-2, Ignatz Decl. ¶ 3; Doc. No. 241-4, Kress Decl. ¶ 3.) It is unclear when they turned 18.

(Doc. No. 1-1 at 1.)

Burgess also "alleges that Jane Doe remains an unidentified DOJI, Inc. employee who was involved in the complaint, refusal-of-service, removal, or ban sequence." (*Id.* ¶ 33.)

The TAC incorporates additional references to discovery produced by the defendants, specifically declarations from Ignatz and others that were created after the plaintiff filed suit. The plaintiff generally contends that these declarations do not include dates on which his allegedly harassing behavior occurred, that they do not constitute "objective" proof that he sexually harassed any DOJI employee, and that the defendants have not produced any pre-lawsuit written documentation by Ignatz showing that she served him or made a complaint about him on April 10 or any evidence showing that he wrote a "creepy note" or a "creepy message" to the other server when he sent her the Uber Eats meal. (TAC ¶¶ 42–47.) He contends that the defendants' reliance on the disputed January/February incident was "unsupported, after-the-fact, defamatory, and pretextual." (*Id.* ¶ 57.)

The plaintiff also details the contents of an email he wrote to Demos immediately after the April 17 incident, in which he reported that, at around 11:00 a.m. on April 17, 2025, Worman "accused him of unspecified misconduct," telling him that his "last server" had filed a complaint and that Demos had "authorized Plaintiff's removal from the restaurant." (*Id.* ¶ 56.) The plaintiff also told Demos that he had "last" been in the Restaurant on April 16 but recalled no incident arising from that visit. (*Id.* ¶ 60.)[7] According to the plaintiff, the defendants later explained that Worman was not aware that he had visited the Restaurant on April 16 and that the "final" incident to which she had referred was his visit on April 10, when Ignatz waited on him and then

[7] The plaintiff does not indicate that he told Demos in this email that Worman had used the "N-word" against him.

complained about him. (*Id.* ¶¶ 63, 65.) The plaintiff contends that this "shifting" explanation conflicts with the "last server" description that the plaintiff reported in his April 17 email to Demos and supports his claim that the defendants' "stated basis for the ban was shifting, unsupported, and pretextual." (*Id.* ¶ 72.)

The defendants, according to the plaintiff, have also taken the position that their identifying Ignatz as the April 10 "complainant" "should resolve the Jane Doe issue." (*Id.* ¶ 74.) The plaintiff contends that the failure to identify Ignatz on April 17 "supports Plaintiff's diligence in seeking discovery and amendment." (*Id.* ¶ 75.)

The plaintiff asserts that "Defendants' identification of Campbell Ignatz, Cassidy Foster, Brandy Worman, Peter Demos, and Jane Doe confirms that the refusal of service and ban involved multiple persons acting within or on behalf of DOJI, Inc." (*Id.* ¶ 77.) He asserts that the "stated basis for the refusal of service and ban was not applied to Plaintiff in the same manner as similarly situated patrons outside Plaintiff's protected racial class," and he denies engaging in any conduct that would justify refusing him service or banning him from the restaurant. (*Id.* ¶¶ 78, 81.) He also maintains that the information on which Demos claims he relied to reach the decision to ban him was insufficient to support the decision and is "contradicted by the lack of a contemporaneous written complaint from Campbell Ignatz, the lack of pre-ban notice to Plaintiff, the lack of pre-ban identification of the complaining employee, the absence of a pre-April 17 document using 'final complaint' or 'last server,' Defendants' shifting descriptions of the alleged final incident, and Peter Demos's admitted failure to review physical evidence before making the ban decision." (*Id.* ¶ 100.)

As noted above, the SAC asserts two claims against all defendants: (1) race discrimination in violation of 42 U.S.C. § 1981, for which the plaintiff seeks $10,000,000 in compensatory damages and $25,000,000 in punitive damages; and (2) race discrimination in a place of public

accommodation in violation of Title II, for which he seeks declaratory and injunctive relief. (SAC at 9–10.) The TAC asserts the same claims, but it also adds a THRA claim (apparently only against DOJI) as well as defamation, false light invasion of privacy, "negligence/negligent investigation/negligent supervision," conspiracy, and fraudulent misrepresentation claims.

### E. Discussion

#### *1. Race Discrimination Claims*

The Motion to Dismiss the SAC (Doc. No. 184) argues that the claims against Demos and DOJI should be dismissed because the pleading contains no facts from which it might be inferred that Demos's (and therefore DOJI's) decision to ban the plaintiff from the restaurant was racially motivated. The defendants assert that the plaintiff fails to plead facts from which it could be inferred that Demos knew that Ignatz's report of inappropriate behavior was false but relied on it anyway. Regarding Worman's alleged racial slur, they argue that there is no basis for attributing that conduct to Demos, particularly because the plaintiff's allegations make it clear that Worman did not use this racial epithet until after she had already told him to leave the premises and he was on his way out the door.[8] (*See* Burgess Aff., Doc. No. 1-1 at 1.)

Regarding the claim against Worman, the defendants argue that the plaintiff admits that Demos was the person who made the decision to ban the plaintiff from the Restaurant and that Worman merely communicated that decision to the plaintiff. (*See* Doc. No. 184 at 6 (citing SAC ¶ 34 ("Plaintiff alleges that the complaint attributed to Campbell Ignatz, the April 17, 2025 confrontation by Brandy Worman, and Peter Demos's ban decision were part of the same course

[8] The defendants note that Worman "vehemently denies using this slur" and contend that "there is significant evidence supporting her denial." (Doc. No. 184 at 7 n.2.) They nonetheless concede that the court must accept the allegation as true for purposes of their Motion to Dismiss. (*Id.*)

of conduct resulting in Plaintiff being denied equal access to Defendants' restaurant.").) They argue, in other words, that the plaintiff admits that Worman's only role in the event was to communicate Peter Demos's decision to the plaintiff and that "the banning decision that Plaintiff claims was racially motivated" is temporally "severed" from "Ms. Worman's alleged racial slur." (*Id.*)

Regarding Ignatz, the defendants argue that the plaintiff's general allegation that Ignatz was "personally involved in the events Defendants contend led to Plaintiff's ban" is insufficient to support a claim against her. (*Id.* at 7 (citing SAC ¶¶ 5, 17, 39).) Similarly, regarding Jane Doe, the defendants assert that the SAC contains no facts implicating another employee in a purported conspiracy to discriminate against him on the basis of race, aside from his continuing to deny that Ignatz could have been his server on April 10. The defendants also argue that the allegations in the SAC are insufficient to support an inference of a conspiracy among the defendants to discriminate against the plaintiff on the basis of race. They also contend that, "[b]y pleading that Ms. Ignatz complained about Plaintiff and that Mr. Demos (the sole decision maker) relied on this complaint to ban Plaintiff, the Second Amended Complaint admits there was a factual basis for the nondiscriminatory reason Mr. Demos decided to ban Plaintiff." (*Id.*) And they reiterate that the plaintiff's claim that Worman used the racial slur after she had told the plaintiff to leave and while he was on his way out the door fails to establish a causal connection between his race and the prior banning decision.

To state a plausible claim for relief under 42 U.S.C. § 1981, a plaintiff must allege facts sufficient to show that "(1) the plaintiff belonged to a protected class; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a)." *Inner City Contracting*, 87 F.4th at 755 (citation

omitted). The defendants concede that the plaintiff has pleaded facts to support the first and third elements. Regarding the second, the plaintiff must allege facts that, if true, are sufficient to "support an inference of discrimination." *Id.* (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000)). Similarly, to state a claim for race discrimination under Title II, the plaintiff must allege facts from which a reasonable factfinder could "infer reasonably that Plaintiff's mistreatment was motivated by racial animus or that Plaintiff was treated less favorably than similarly situated non-African American customers." *Thomas v. Murphy Oil Corp.*, 777 F. App'x 377, 380 (11th Cir. 2019). At this stage, there appears to be little difference in the pleading standards that apply to these two statutes. The question is whether the plaintiff plausibly alleges intentional discrimination on the basis of race.

Here, if we completely disregard the defendants' evidentiary material that the plaintiff purports to dispute, the facts, as alleged by the plaintiff are simple. He was a long-term patron of the Restaurant. Over the course of ten-plus years, he was a patron at the Restaurant frequently enough to have a "favorite table." (*See* First Am. Compl., Doc. No. 16 at 5.) He does not allege that he ever felt that he was the target of race discrimination at any time during that ten-plus years, up until April 2025. However, on April 17, 2025, when he sought to have lunch at the Restaurant, Worman "falsely accused" him of "unspecified misconduct" (but insinuating sexual harassment), telling him that his "last server" had complained about his behavior, that he needed to leave, and that Peter Demos had banned him from the Restaurant. (Doc. No. 1-1 at 1; TAC ¶¶ 59.) The plaintiff asserts that the "sexual harassment justification is false and pretextual" and denies ever engaging in conduct that would warrant the alleged complaints or his expulsion and exclusion from the Restaurant. (TAC ¶¶ 47, 57.) He alleges that Worman and Demos failed to adequately investigate the complaints and relied on unverified information when they decided to ban him. (*Id.*

¶¶ 109, 151.) Finally, he alleges that Worman used the "N-word" toward him when he was on his "way out," "when he stated he would have to sue for this behavior." (*Id.* ¶ 32; Doc. No. 1-1 at 1.)

The court finds, first, that the TAC (like the SAC) unequivocally fails to state a claim against the Jane Doe defendant. The TAC itself does not contain any allegations against any unidentified DOJI employee suggesting that this unidentified employee intentionally discriminated against the plaintiff based on race or had any involvement in the alleged discrimination. The plaintiff's speculation that some unidentified individual was involved in the chain of events leading to the decision to ban him from the Restaurant is just that—speculation unsupported by actual facts. The claims against the Jane Doe defendant will be dismissed on this basis.

Similarly, the TAC fails to state a claim against Ignatz. Regarding this defendant, the TAC says only that Ignatz has been identified by the defendants as the person whose alleged complaint formed part of the basis for Demos's decision to ban him. (TAC ¶ 5.) The plaintiff "disputes Defendants' account of the April 10, 2025 incident, denies sexually harassing Campbell Ignatz, and alleges that Defendants' stated sexual-harassment justification was false and pretextual." (*Id.* ¶ 29.) He claims that Ignatz signed a declaration that defendants relied on to support the "sexual-harassment/pretext narrative, including their contention that the April 10, 2025 incident was part of the basis for Plaintiff's ban." (*Id.* ¶ 31.) And he further refers to the contents of Ignatz's Declaration, in which she "states that she heard about an alleged 'creepy note' involving Plaintiff and treated Plaintiff differently based on what she had heard," which, he claims, demonstrates that a false narrative about him was circulated among DOJI employees before the ban. (*Id.* ¶ 40;[9] *see*

---

[9] This portion of Ignatz's Declaration and the substance of her complaint about the plaintiff are not in the record. But the plaintiff appears, at least, to concede that Ignatz made a complaint, though he may dispute when she made it.

*also id.* ¶ 42 ("Plaintiff alleges that those communications created or repeated a false 'reputation' narrative portraying Plaintiff as sexually inappropriate, creepy, harassing, or dangerous, despite Plaintiff's denial of misconduct and despite the absence of objective corroboration.").)

The plaintiff does not allege that the substance of Ignatz's complaint had anything to do with race or that his "reputation" for being "creepy" was race-based. The plaintiff, at this point, does not appear to be disputing that Ignatz complained to someone about him. Instead, his position is that her complaint was unjustified (and that Demos and Worman were unjustified in relying on it). He does not allege any facts suggesting that Ignatz was motivated by racial animus or, moreover, that she had any involvement in the decision to ban the plaintiff from the Restaurant.

Next up is Worman. The plaintiff's allegations regarding Worman, which are accepted as true at this juncture, are that Worman reported a (hearsay, false, or exaggerated) complaint about him from Ignatz to Demos.[10] Demos, in light of the earlier complaint a few months previously, decided to ban the plaintiff from the restaurant and authorized Worman to convey that message to him if or when he came back. Worman conveyed that decision to Burgess on April 17, 2025, telling him only that there had been another unspecified complaint against him (implying sexual

[10] The plaintiff's theory regarding Worman is not entirely clear. The plaintiff appears to be claiming either that (1) the second complaint was a complete fabrication made up post hoc to justify Worman's exclusion of him and that, in fact, he was banned because of his race or (2) that Demos's and Worman's reliance on the complaints against him was unjustified because they did not adequately investigate and verify the truth of the complaints before banning him and that, in fact, he was banned because of race. Either way, the plaintiff's claim is thinly supported, to say the least. He does not explain why he would suddenly, after ten years of frequenting the restaurant, be expelled based on his race. The most plausible explanation for the defendants' action is the one that the defendants, through discovery, have proffered: that more than one teenaged server or hostess at the Restaurant complained that the plaintiff's conduct made them uncomfortable and that, after Ignatz complained, Demos made the decision to ban him from the Restaurant and directed Worman to convey that decision to the plaintiff. Regardless, the court considers only the plaintiff's affirmative averments (as distinct from his reporting what the defendants have told him) in considering whether the TAC states a plausible claim.

harassment) and that Demos had decided to ban him from the Restaurant. When Burgess was leaving, he told Worman that he would have to file a lawsuit, and she then allegedly used against him an unacceptable racial epithet.

The Sixth Circuit has recognized that the use of the "N-word," "even taken in isolation, is not a 'mere offensive utterance.'" *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 454 (6th Cir. 2004) (citations omitted)). And, in the employment context at least, courts have repeatedly recognized that the "use of racial epithets . . . may 'create an inference that racial animus motivated other conduct as well.'" *Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir.1999) (quoting *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 (8th Cir. 1999)). In this case, the plaintiff's allegations indicate that Worman was integrally involved in the banning decision, having taken the step of presenting Ignatz's complaint, which was not in writing, to Demos. Her purported use of the racial epithet suggests that her view of the complaints against Burgess might, at a minimum, have been colored by racial animus. It gives rise to a permissible inference that she sought to ban him based on his race. The court finds that the TAC, just barely, under the standard governing Rule 12(b)(6) motions, states a colorable claim against Worman for intentional discrimination based on race under both § 1981 and Title II and, therefore, is not futile in that regard.[11]

As for the claim against Peter Demos and DOJI, the plaintiff alleges in a wholly conclusory fashion that the "stated basis for the refusal of service and ban was not applied to Plaintiff in the same manner as similarly situated patrons outside Plaintiff's protected racial class." (TAC ¶ 78.) The court surmises that the plaintiff means that Demos and DOJI have not banned or refused service to similarly situated non-Black/Native American customers who have been accused of

[11] As noted above, Worman expressly denies using this epithet, and the defendants assert that substantial evidence in the record supports her denial. If the proof bears out that assertion, a different outcome at the summary judgment stage may be warranted.

sexually harassing teenage servers or other inappropriate conduct. The plaintiff, however, does not provide any facts to support the statement. He provides, in short, no basis for attributing to Demos or the Restaurant racial animus or an intent to discriminate against the plaintiff on the basis of race. The plaintiff also alleges that Demos was negligent in investigating the complaints against him, but negligence does not support a claim for intentional discrimination.

The plaintiff also states that he emailed Demos after his interaction with Worman on April 17. He does not indicate that he told Demos that Worman had used the "N word." Instead, he alleges only that he told Demos that Worman had "accused him of unspecified misconduct," stated that his "last server" had "filed a complaint, and that Demos had "authorized Plaintiff's removal from the restaurant." The plaintiff disputed any "incident" during his last visit on April 16, requested that Demos "preserve video footage from the restaurant for the relevant time period," and requested any other evidence "related to the accusation against him." (*Id.* ¶¶ 58–62.) None of these allegations provides a basis for attributing Worman's use of a racial epithet to Demos or DOJI; nor do they suggest that Demos, when he decided to ban the plaintiff from the Restaurant, was motivated by racial animus. The only other basis for the claim against Demos appears to be that he has not retracted the ban, even after the plaintiff filed suit. That suggestion does not support an inference that Demos's banning decision at its origin was racially motivated.

Insofar as the plaintiff alleges that the "refusal of service and ban involved multiple persons acting within or on behalf of DOJI" (TAC ¶ 77), he does not allege facts suggesting that Ignatz acted on behalf of DOJI or, again, that Demos intentionally discriminated against the plaintiff based on race. The mere fact that the plaintiff is Black/Native-American, standing alone, is not sufficient to create an inference of discrimination on the basis of race. *Accord, e.g.*, *Marshall v. Wayne Cnty.*, No. 22-1499, 2023 WL 2707222, at *3 (6th Cir. Mar. 30, 2023) ("[T]he mere fact

that Marshall is African American and someone pulled a prank on him isn't enough to raise an inference of racial animus."); *Lindsay v. Yates*, 578 F.3d 407, 417 (6th Cir. 2009) (explaining that something undesirable happening to a member of a protected class, without more, does not give rise to an inference that it happened because he was a member of a protected class); *Campbell v. Morrison*, 97 F.3d 1451 (Table), 1996 WL 511579, at *8 (6th Cir. Sept. 9, 1996) ("The only evidence Plaintiff offers to support his claim that the conduct was racially motivated is the fact that he is black and the defendants white. This type of conclusory allegation without more is insufficient to support the claim . . . .").

Regarding the TAC's claim that the defendants' explanation for the decision to ban the plaintiff is "pretext," the question of pretext only comes into play at a later stage in the proceedings. Before a defendant is required to explain its action, the plaintiff, to avoid dismissal of his claim, must adequately allege facts that, if true, support an inference of intentional discrimination. He has (barely) alleged discrimination by Worman, but his claims against the other defendants do not withstand scrutiny under the Rule 12(b)(6) standard.

In sum, the court finds that the plaintiff's Motion to Amend is not futile with respect to the § 1981 and Title II discrimination claims against Worman.[12] But it is futile with respect to the other defendants.

*2. Conspiracy*

The plaintiff alleges that "two or more Defendants" conspired "expressly or impliedly" to "advance a false, unsupported, shifting, and pretextual sexual-harassment narrative to justify"

[12] Because a plaintiff may only obtain injunctive relief for a Title II violation, it is entirely unclear whether such a claim may be asserted against an individual as opposed to a place of public accommodation (or its owner/decisionmaker). This is an issue that remains to be resolved at a later stage of the litigation.

refusing him service. (TAC ¶ 155.) This is materially different from his original conspiracy-to-defame claim, but the governing legal standards are the same. To state a conspiracy claim under Tennessee law, the plaintiff must plead conspiracy "with some degree of specificity." *College v. Nat'l Ass'n of Christian Athletes*, No. E2021-00931-COA-R3-CV, 2023 WL 128275, at *5 (Tenn. Ct. App. Jan. 9, 2023) (citing *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002)). "Conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Id.* (citing *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)). The plaintiff's conclusory allegations regarding the existence of a conspiracy remain insufficient to state a claim.

*3. Defamation and False Light Claims*

To state a claim for slander (spoken defamation) under Tennessee law, the plaintiff must allege facts that, if true, establish that: "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citation omitted). "'Publication' is a term of art meaning the communication of defamatory matter to a third person." *Id.* (citing *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994)). In addition, "the substance of the slanderous utterance [must be] pled along with notice of the time and place of the utterance." *Handley v. May*, 588 S.W.2d 772, 775 (Tenn. Ct. App. 1979); *see also Blythe v. Forsythe*, No. M2023-01463-COA-R3-CV, 2025 WL 3095415, at *9 (Tenn. Ct. App. Nov. 6, 2025).

The Magistrate Judge at an earlier stage of this case recommended dismissing the defamation claim because the plaintiff failed to adequately allege facts that would establish publication. In particular, the R&R concluded that "discussion amongst the company and its employees does not satisfy the publication requirement." (Doc. No. 48 at 7 (citing *Boyd v. United Parcel Serv., Inc.*, No. 3:24-cv-00651,2024 WL 4960007, at *6 (M.D. Tenn. Dec. 3, 2024)).) The

Magistrate Judge also held that the plaintiff's allegations that defaming statements were made "in the middle of a busy restaurant in front of customers and employees" did not show that "any customers heard, let alone understood, the statements allegedly made by [Worman], nor does [the plaintiff] attempt to identify anyone within the purported group of customers as third parties-bystanders." (Doc. No. 48 at 7.) This court overruled the plaintiff's objections and dismissed the claim.

The plaintiff attempts to remedy the deficiency in his earlier pleading by alleging now that Worman approached him after he had already been seated and, "in a voice loud enough to be heard by persons seated at the immediate adjacent and nearby occupied tables, stated, in substance, that Plaintiff's 'last waitress' had reported that Plaintiff had 'sexually harassed her' and that Plaintiff was 'banned from the restaurant.'" (TAC at 14.) He alleges that there were six other tables located within two feet of where he was seated and that "at least one or more of those patrons in fact heard, understood, and reacted to the statements." (*Id.*)

The defendants assert that the defamation and false light claims should be dismissed because the TAC repleads defamation, which had already been dismissed, and because the false light claim depends largely on the same elements and same facts. The court finds that the defendants have not adequately addressed the plaintiff's new allegations pertaining to the "publication" element and, therefore, have not carried their burden of showing that the proposed amendment, reasserting a defamation claim—which was dismissed without prejudice—and asserting a new false light claim, is futile.[13]

---

[13] As noted above (*see* Note 4), the Magistrate Judge properly excluded from consideration the Tennessee Alcoholic Beverage Commission ("TABC") Incident Report the plaintiff sought to introduce in further support of the publication element of his defamation claim. (Doc. No. 274-1.) The statement reflected in that Incident Report—"Mr. Demos stated that there is an ongoing incident involving harassment with the individual who filed the complaint."—is factually true.

*4. Negligence Claims*

The plaintiff's reasserted negligence claims largely depend on the contention that Peter Demos and Worman (or "defendants") had and breached a "duty to exercise reasonable care before relying on serious accusations to refuse him service, remove him, ban him, and damage his reputation." (TAC ¶ 148.) The plaintiff's earlier iteration of his negligence claim was dismissed based on the court's conclusion that DOJI and its supervisors did not owe a particular duty to the plaintiff to investigate employees' complaints about a customer before deciding to refuse service to that customer. (*See* Doc. No. 48 at 9; Doc. No. 79 at 11.) The plaintiff still has not shown that the defendants owed him a particular duty to investigate. The plaintiff's negligence claim remains futile.

*5. Fraudulent Misrepresentation*

The plaintiff's original fraudulent misrepresentation claim was dismissed on the basis that he failed to allege a false material representation upon which *he* relied. (Doc. No. 79 at 11–12.) The TAC attempts to overcome that deficiency, alleging that the plaintiff relied to his detriment on Worman's representation that "another complaint had been made against him and that he was banned from the restaurant." (TAC ¶ 159.) He claims that this representation was "false or materially misleading because Defendants' later discovery responses show that the stated basis was unsupported, shifting, and not corroborated by contemporaneous written evidence or video." (*Id.* ¶ 161.)

These allegations still fail to state a colorable claim for fraudulent misrepresentation. The plaintiff does not appear to seriously contend that Worman's statement—that another complaint

---

This lawsuit is the ongoing "incident" involving harassment between the Restaurant and the plaintiff. The statement is also not defamatory as a matter of law. The TABC Incident Report, therefore, is irrelevant to his defamation claim.

had been made against him by a server and that he was banned from the Restaurant—was factually false. Instead, he is claiming that the underlying second complaint was false. Moreover, he expressly states that he did not rely on the representation regarding the legitimacy of any of the complaints—he "denied and continues to deny sexually harassing any DOJI employee." (*Id.* ¶ 166.) Instead, he claims that Worman's statement "conveyed that Defendants had a real, existing, good-faith, non-discriminatory factual basis for refusing service" and that that "representation" was false or misleading because he later discovered from defendants' discovery answers that "the stated basis was unsupported, shifting, and not corroborated by contemporaneous written evidence or video." (*Id.* ¶ 161.) This allegation is nonsensical and, moreover, not supported by the TAC (or any other pleading). The plaintiff does not allege that Worman made any representation regarding the existence of evidence supporting the complaints or the ban. In fact, according to the plaintiff, she did not even identify the complainant during that initial confrontation. Moreover, the plaintiff necessarily would have been a party to any interaction between himself and the Restaurant's staff and therefore would have been in a position to know whether he had engaged in any offensive conduct.

To the extent the plaintiff might be taking the position that there was no second complaint and that Worman made it up, it remains undisputed that the plaintiff was banned from the restaurant, so it is unclear how his reliance on the existence of a perhaps invented complaint was detrimental. He would still have been required to leave the Restaurant that day. And, again, he would have been in a position to know all along whether he had engaged in conduct that might be perceived as objectionable.

The TAC, therefore, still does not allege a false representation to the plaintiff upon which he reasonably relied, as required to state a claim of fraudulent misrepresentation under Tennessee law. *Lapinsky v. Cook*, 536 S.W.3d 425, 443 (Tenn. Ct. App. 2016).

**F. Conclusion – Motion to Amend and Motion to Dismiss**

The court finds that the Motion to Amend is not futile, insofar as it asserts (just barely) a plausible claim against Worman for race discrimination in a place of public accommodation, and insofar as the defendants have not adequately addressed the new allegations in support of the renewed defamation claim and the new false light claim, also asserted against Worman. The court, therefore, will grant the Motion to Amend and direct that the TAC be filed as a stand-alone document, and the § 1981, Title II, defamation and false light claims may proceed against Worman. At the same time, the court will dismiss as futile, or for failure to state a claim, all claims against the other defendants.

The Motion to Dismiss the SAC will be denied as moot.

**III. THE SANCTIONS MOTION**

Also before the court is the defendants' Renewed Motion to Declare Plaintiff a Vexatious Litigant and for Inherent Authority Sanctions. (Doc. No. 246.) This motion seeks sanctions under 28 U.S.C. § 1927 and under the court's "inherent authority. The plaintiff vigorously opposes this motion (Doc. Nos. 249) (primarily continuing to push for discovery of "source evidence"), and the Magistrate Judge recommends that it be granted and that the case be dismissed in its entirety as a sanction for the plaintiff's vexatious conduct (R&R at 13, 15, 16).

In support of their renewed motion, the defendants point primarily to the plaintiff's "dizzying array of nineteen motions" filed between April 29 and June 9, despite the court's efforts to "address Plaintiff's voluminous and unnecessary filings" and his "doubling down" on pointless and voluminous discovery after his deposition on May 13. (Doc. No. 246 at 2, 3.) The Magistrate

Judge relates in some detail the plaintiff's voluminous and frivolous filings and finds that the plaintiff has "left no doubt that his conduct is willful, malicious, and driven by a bad-faith desire to injury defendants by running up their legal bills." (Doc. No. 293 at 12.) In his Objections, the plaintiff continues to maintain that he seeks "source-verification" discovery in good faith. He also argues that a showing of bad faith requires something more than "merely pursuing a meritless position" and that inherent authority sanctions require notice and an opportunity to be heard. The court is sympathetic to the plight in which the defendants find themselves and to the Magistrate Judge's frustration with the plaintiff's conduct but finds that the recommendation that attorney's fees be awarded and that the case be dismissed in its entirety to be disproportionate to the conduct at issue here, which does not involve flagrant disregard of clearly articulated court orders.

At the same time, the court finds that the plaintiff's continued attempts to pursue "source-verification" documentation that is both irrelevant and disproportionate to the needs of the case must cease. The only additional discovery that the plaintiff may pursue is limited to the five depositions permitted in the Magistrate Judge's Order entered on May 28, 2026, which will be limited to no more than two hours each.

In addition, the court will lift the referral for the purpose of denying all of the plaintiff's pending motions filed after his Motion for Review filed on October 7, 2026 (Doc. No. 308) through the date of this Memorandum and accompanying Order. Specifically, the following motions will all be denied:

(1) the plaintiff's Motion for a Conduct-Specific Finding and Sanctions (Doc. No. 310), which relates to a meeting that occurred on May 20, 2026;

(2) his Motion for Leave to File a Limited Supplement to his "conduct-specific finding" motion (Doc. No. 311);

(3) his Motion to Deem his Motion for Conduct-Specific Finding Unopposed (Doc. No. 318);

(4) his Motion for Leave to File a Limited Sur-reply to Defendants' Reply in Support of Rule 11 Motion (Doc. No. 322).

In addition, the sole remaining defendant (Worman) will not be required to respond to any motion filed by the plaintiff unless directed to do so by the court.

## IV. THE DEFENDANTS' RENEWED MOTION FOR RULE 11 SANCTIONS (DOC. NO. 319)

The defendants have also renewed their Motion for Rule 11 Sanctions. (Doc. No. 319.) In the interest of conserving judicial resources, the court will lift the referral to the Magistrate Judge and consider this motion directly.

This motion seeks sanctions for specific motions the plaintiff has filed (Doc. Nos. 305, 310) as frivolous and baseless. In a Memorandum and Order entered contemporaneously with this ruling, the court has denied the plaintiff's "Motion for Review of Nondispositive Order of Magistrate Judge (Doc. 304)" (Doc. No. 305) and, as noted above, will deny as frivolous his Motion for a Conduct-Specific Finding and Sanctions (Doc. No. 310), which relates to a meeting that occurred on May 20, 2026. The defendants state that they complied with the safe harbor requirements of Rule 11 by emailing the plaintiff a draft of their Rule 11 motion regarding these filings and requesting that he withdraw them within twenty-one days (*i.e.*, by November 3, 2026). (Doc. No. 319 at 3; *see also* Doc. No. 319-1, Weber Decl. ¶¶ 3–4 & Ex. A (email).)

The plaintiff did not withdraw the motions. Instead, he filed a Response to the motion on November 4, arguing only that the defendants did not properly serve the motion on him as required by Rule 11(c)(2) because they emailed it to him without presenting proof of consent to service by email, as required by Rule 5. The defendants filed a Reply, arguing that the plaintiff has consented

to service by email of court filings and discovery materials by email and through CM/ECF, and the parties have consistently communicated thus throughout this case. (Doc. No. 321.) In fact, the plaintiff filed a Consent to Electronic Service in December 2025, expressly consenting to service by email of all "notices and electronic filings" in this case and confirming his understanding that he would "no longer receive paper copies of any documents issued by the court or electronically filed by other parties to this case." (Doc. No. 65.) He has admittedly agreed to service of discovery by email. And, with their Reply, the defendants submitted a copy of a letter to defense counsel from the plaintiff dated November 12, 2025, in which the plaintiff proposed that the parties "confer through written instruments or email (email is preferred)" beginning December 1, 2025. (Doc. No. 321-1.) The plaintiff filed a proposed Surreply, arguing that his November 12 letter only consented to communications by email regarding the Rule 26 conference and discovery. (Doc. No. 322-1.)

The plaintiff does not deny receiving the email notice, and he does not respond to the substance of the defendants' motion. He has been warned repeatedly about frivolous and repetitive filings. Under the circumstances, the court finds, under its own inherent authority and based on the numerous warnings the plaintiff has received, that the defendants are entitled to the reasonable costs of responding to the two motions. However, because the motions were patently frivolous and merited little in the way of a response, the court will order that the plaintiff pay the defendants' attorney's fees in the amount of $300, which is undoubtedly far less than the defendants actually incurred but should be sufficient to sanction the plaintiff and to prevent the continued filing of frivolous motions.

## V. CONCLUSION

As set forth herein, the court will largely reject the R&R (Doc. No. 293) and sustain in part the plaintiff's Objections (Doc. No. 294). The plaintiff's Motion for Leave to File Short Reply and

Supplemental Exhibit (Doc. No. 296) will be granted. The court will rule as follows on the pending dispositive (and other) motions:

(1) The Motion for Leave to File Third Amended Complaint (Doc. No. 174) will be granted, and the Clerk will enter the TAC on the docket.

(2) However, all claims set forth in the TAC, against all defendants, will be dismissed for failure to state a claim *except* the federal race discrimination claims and the state defamation and false light claims against defendant Worman.

(3) The defendants' Motion to Dismiss the SAC (Doc. No. 184) will be denied as moot.

(4) The plaintiff's still pending Motion for Leave to File Supplemental Rule 12(d) Objection to Defendants' Reliance on Extra-Pleading Materials in Support of Motion to Dismiss Second Amended Complaint (Doc. No. 222) will likewise be denied as moot.

(5) The defendants' Renewed Motion to Declare Plaintiff a Vexatious Litigant and for Inherent Authority Sanctions (Doc. No. 246) will be granted in part. The court finds that the plaintiff's unreasonable conduct warrants sanctions limiting his filings, his continued pursuit of discovery, and the defendants' responsibility to respond. The court will order that

(a) The plaintiff shall not conduct any additional discovery aside from the five depositions permitted in the Magistrate Judge's Order entered on May 28, 2026, which will be limited to no more than two hours each.

(b) All of the plaintiff's pending motions filed after his Motion for Review filed on October 7, 2026 (Doc. No. 308) through the date of this Memorandum and accompanying Order will be denied, specifically including, but not limited to, the following motions:

(i) the plaintiff's Motion for a Conduct-Specific Finding and Sanctions (Doc. No. 310), which relates to a meeting that occurred on May 20, 2026;

(ii) his Motion for Leave to File a Limited Supplement to his "conduct-specific finding" motion (Doc. No. 311);

(iii) his Motion to Deem his Motion for Conduct-Specific Finding Unopposed (Doc. No. 318);

(iv) his Motion for Leave to File a Limited Sur-reply to Defendants' Reply in Support of Rule 11 Motion (Doc. No. 322).

(c) Going forward, the sole remaining defendant (Worman) will not be required to respond to any motion filed by the plaintiff unless directed to do so by the court.

(d) The plaintiff will be directed to cease filing vexatious motions seeking relief the court has already denied or raising issues the court has already addressed. If the plaintiff fails to comply with this directive, the court will not hesitate to impose additional monetary or other sanctions.

(6) The court will accept the R&R's recommendation that the defendants' Motion for Sanctions be denied, as no party has objected to that recommendation. The Motion for Sanctions (Doc. No. 272) will be denied without prejudice.

(7) The defendants' renewed Motion for Rule 11 Sanctions (Doc. No. 319) will be granted, and the court will require the plaintiff to pay the defendants' attorney's fees in the amount of $300, which he will be required to pay by December 1, 2026.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge